IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SAFETY-KLEEN SYSTEMS, INC., | : | CIVIL ACTION NO. |
| Plaintiff, | : | |
| vs. | : | JURY TRIAL DEMANDED |
| DON R. PENNELL, | : | |
| Defendant. | : | |

## COMPLAINT

Plaintiff Safety-Kleen Systems, Inc. ("Safety-Kleen"), for its complaint against defendant Don R. Pennell ("Pennell"), alleges the following based on knowledge as to itself and its own actions and on information and belief as to all other matters:

**INTRODUCTION**

1. By this action, Safety-Kleen seeks damages for the actions of the defendant, a former employee from Safety-Kleen's Malvern, Pennsylvania office. Pennell left his employment with Safety-Kleen on December 14, 2001, and, in blatant and open violation of his employment agreements with Safety-Kleen, began, and continues, to solicit Safety-Kleen's customers to switch to his new employer, Heritage Crystal Clean ("Crystal Clean"), a major competitor of Safety-Kleen with a local facility in Fairless Hills, Bucks County, Pennsylvania.

2. Safety-Kleen is a waste management company that provides a variety of customized hazardous and industrial waste collection and recycling services to its customers. Its business typically involves stable, long-term, sole-source relationships with its customers, often under automatically renewable service agreements.

3. As a result of the nature of its business, Safety-Kleen's sales and service employees gain access to confidential and proprietary information regarding Safety-Kleen's customers during their employment with Safety-Kleen. In addition to learning the identity of Safety-Kleen's customers, sales and service employees such as Pennell gain access to such information as the pricing of Safety-Kleen's services, the terms and expiration dates of Safety-Kleen's contracts with its customers, the identity of customers' employees with decision-making authority, and historical information concerning customers' utilization rates and customized requirements.

4. In order to prevent employees from abusing the confidential and proprietary information to which they gain access while employed by Safety-Kleen, as Pennell has done, Safety-Kleen enters into restrictive covenants and confidentiality agreements with its sales and service employees as a condition of employment.

5. Pennell executed several employment agreements with Safety-Kleen, discussed more fully below, that contain, among other provisions, a non-disclosure provision precluding him from disclosing Safety-Kleen's confidential and proprietary customer information, and a restrictive covenant precluding him from soliciting Safety-Kleen's customers or employees or otherwise competing with the business of Safety-Kleen within a narrowly defined geographic area (the "Geographic Area") for a period of one year after terminating his employment with Safety-Kleen.

6. In breach of his agreements and in violation of Pennsylvania common law, Pennell has engaged and continues to engage in direct competition with Safety-Kleen within his Geographic Area, and has eagerly and repeatedly solicited and continues to solicit Safety-Kleen's customers within his Geographic Area, including customers for which he was

responsible while employed at Safety-Kleen. Pennell has utilized Safety-Kleen's confidential and proprietary customer information while employed with Crystal Clean and has misused and continues to misuse such information to solicit Safety-Kleen's customers and to gain an unfair competitive advantage.

7. As a direct result of Pennell's intentional wrongful conduct, Safety-Kleen has lost and continues to lose previously stable customer accounts in Pennsylvania.

**PARTIES**

8. Safety-Kleen is a Wisconsin corporation having its principal place of business in South Carolina. Safety-Kleen is an indirect, wholly owned subsidiary of Safety-Kleen Corp., a vertically integrated waste management company. On June 9, 2000, Safety-Kleen Corp. and 73 of its domestic subsidiaries, including Safety-Kleen, filed a voluntary petition for reorganization under Chapter 11 of the U.S. Bankruptcy Code in the U.S. Bankruptcy Court for the District of Delaware. Safety-Kleen Corp. and its subsidiaries, including Safety-Kleen, remain in possession of their properties and assets, and are authorized to continue to operate their businesses. Safety-Kleen continues to provide parts cleaner and other waste management services to its customers in the same manner as it did prior to seeking reorganization.

9. Pennell held various positions with Safety-Kleen during his employment. He was hired during July 1985 to work as a Sales Representative in the Malvern branch. During 1989 he was promoted in Malvern to Branch Industrial Manager. During 1996 he was promoted to Regional Industrial Trainer. During September 2001 his title changed to Regional Sales Support Specialist. His employment with Safety-Kleen terminated on or about December 14, 2001. Pennell is a citizen of Pennsylvania residing in Downington, Chester County.

**JURISDICTION AND VENUE**

10. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between plaintiff and defendant and because the amount in controversy exceeds $75,000, exclusive of interest and costs.

11. Venue is proper in this district pursuant to 28 U.S.C. § 1391 in that defendant is a citizen of Pennsylvania residing in this judicial district and a substantial part of the events giving rise to this action occurred in this judicial district.

**FACTS GIVING RISE TO THE COMPLAINT**

**Safety-Kleen's Business**

12. Safety-Kleen provides a variety of waste collection and recycling services to its customers nationwide, including its core business of providing parts cleaner service and equipment to automobile repair stations, car and truck dealers, small engine repair shops, fleet maintenance shops, and various industrial and manufacturing customers.

13. Safety-Kleen's parts cleaner services typically include installation of Safety-Kleen parts cleaner equipment and solvent at customer locations. Thereafter, Safety-Kleen service representatives make service calls at regular intervals to clean and maintain the equipment and remove and dispose of the dirty solvent and replace it with clean solvent. The majority of dirty solvent is recycled for reuse. Safety-Kleen offers several models of parts cleaners to customers for different applications and also provides service to customers that own their own parts cleaner equipment.

14. Safety-Kleen enters into contracts with most of its customers whereby Safety-Kleen contracts to provide customized services based on the particular customer's needs and requirements for a specified period, typically two years. At the end of the contractual term, Safety-Kleen's contracts automatically renew for another two years unless cancelled by the

customer within the contractual cancellation period, which is typically the 45 days preceding the second anniversary of the contract.

15. Safety-Kleen has had long-standing relationships with many of its customers and has expended substantial money and time in developing and maintaining those relationships. It is common for exclusive customer relationships to endure for ten years or more.

16. Because Safety-Kleen's services are provided on-site at the customers' locations and are highly customized to fit the particular requirements of each customer, Safety-Kleen's sales and service employees have substantial contact with its customers and gain extensive knowledge of confidential, proprietary and/or trade secret information concerning Safety-Kleen customers.

17. Safety-Kleen's confidential, proprietary and/or trade secret information ("Confidential Information") includes information regarding (1) confidential customer account lists; (2) confidential pricing and/or cost information; (3) confidential information concerning the business needs, purchasing patterns and identities of decision makers of its customers; (4) confidential information concerning the expiration dates of service contracts with customers, automatically renewable unless terminated by the customer; (5) confidential information relating to Safety-Kleen's business methods and marketing efforts; (6) confidential information relating to Safety-Kleen's marketing plans and strategies; and (7) confidential information relating to other Safety-Kleen employees' ties to key Safety-Kleen customers.

18. Safety-Kleen management monitors customer relationships by, among other things, periodically generating customer information spreadsheets known as Alpha lists. These lists contain a broad array of Confidential Information in summary form on a customer-

by-customer basis, including customer identities, history, purchasing patterns, pricing and pricing strategies, service schedules and expiration of service agreements.

19. Safety-Kleen's Confidential Information is not readily available to the general public. Safety-Kleen has taken reasonable steps to protect and maintain the secrecy of its Confidential Information by, among other things, marking documents containing customer information as "Confidential and Proprietary," restricting distribution, and requiring employees with access to sign non-disclosure agreements.

20. Safety-Kleen derives substantial economic value from maintaining the secrecy of the customer information it develops.

21. The hazardous waste removal and disposal industry is highly competitive. Crystal Clean is a major competitor of Safety-Kleen in a number of states including Pennsylvania.

**Pennell's Employment with Safety-Kleen**

22. Pennell was hired during July 1985 to work as a Sales Representative in the Malvern, Pennsylvania branch. During 1989 he was promoted in Malvern to Branch Industrial Manager. During 1996 he was promoted to Regional Industrial Trainer, and he traveled throughout the entire United States training Safety-Kleen sales employees, including sales employees working in the Malvern branch. During September 2001 his title changed to Regional Sales Support Specialist.

23. In these job positions, Pennell's duties included calling on and having direct contact with customers and potential customers of Safety-Kleen. It also included training Safety-Kleen employees about confidential and proprietary Safety-Kleen sales information.

24. In these job positions, Pennell developed close personal relationships with the customers he served.

25. At all times he was employed with Safety-Kleen, Pennell had access to Safety-Kleen's Confidential Information.

26. Furthermore, Pennell received and successfully completed extensive specialized training from Safety-Kleen, including but not limited to the following training programs:

- Environment, Health and Safety Training, including instruction in Hazard Communication, Preventing Injuries and Illnesses, Hazards Associated with Material Handling, Chemistry of Safety-Kleen Products, Waste Analysis Plan, and Preparedness/Prevention & Contingency Plans;
- Initial Contingency Plan Training;
- Respirator Fit Testing & Training;
- Respirator Protection Training;
- 8-Hour Annual "Hazwoper" Training;
- Accident Investigation Training;
- Safe Procedures for Materials Handling Training;
- Bloodborne Pathogens Training; and
- Drum Closure Training.

27. Pennell left his employment with Safety-Kleen on or about December 14, 2001 and thereafter commenced employment with Crystal Clean, a major competitor of Safety-Kleen. At the time he left Safety-Kleen he held the position of Regional Sales Support Specialist.

**Pennell's Covenants**

28. On June 27, 1985, Pennell entered into an Employment Agreement with Safety-Kleen (the "1985 Agreement"). (A true and correct copy of the 1985 Agreement is appended hereto as <u>Exhibit A</u>.)  The 1985 Agreement contained the following relevant provisions:

> 3. Competitive Activities After Termination of Employment: Employee agrees that for a period of one (1) year from the date on which his employment terminates, for whatever reason, he will not solicit or divert, or attempt to solicit or divert any of the customers, employees or patronage of the Company, and he will not for himself or on behalf of any other person, firm or corporation engaged directly or indirectly in any activity competitive with the business carried on by the Company within 95 miles of the geographical area for which he was assigned the responsibility under Addendum "A" by Safety-Kleen Corp.
>
> Addendum A:
> Geographic Area: Chester, Lancaster, and Montgomery Counties, PA.

29. The counties set forth in Addendum A of the 1985 Agreement are referred to herein as the "Geographic Area" for purposes of Pennell's employment with Safety-Kleen.

30. In addition to the counties set forth in Addendum A to the 1985 Agreement, Pennell performed sales duties for Safety-Kleen in the following counties in Pennsylvania:  Bucks and Philadelphia.  Bucks and Philadelphia Counties are within 95 miles of the geographical area for which Pennell was assigned the responsibility for Safety-Kleen under Addendum "A" of the 1985 Agreement.

31. On January 2, 2002, Pennell entered into an Agreement and General Release with Safety-Kleen (the "Severance Agreement"). (A true and correct copy of the Severance Agreement is appended hereto as <u>Exhibit B</u>.)  The Severance Agreement contained the following relevant provisions:

> 2. Employee agrees that during the Severance Period, which begins on the Termination Date, Employee will not, directly or indirectly: (a) solicit or interfere with the business relationships between Employer or any of its

8

parents, subsidiaries or affiliates (collectively, the "Company") and any Company clients, prospective clients, accounts, or contacts within the United States and within any other country in which the Company does business whose identity was made known to Employee during his/her employment with the Company, if such solicitation is for a product or service comparable to that provided by the Company on the Termination Date; or (b) without the prior approval of the Company, hire or solicit to leave the employment of the Company any individual who is at the time of determination an employee of the Company.

\* \* \*

This Agreement sets forth the entire agreement between Employee and Employer, and fully supersedes any and all prior agreements or understandings between them regarding its subject matter; provided, however, that nothing in this Agreement is intended to or shall be construed to modify, impair or terminate any obligation of Employee pursuant to any noncompete, non-solicitation, confidentiality or intellectual property agreement executed before the date of this Agreement that by its terms continues after Employee's separation from Employer's employment.  This Agreement may only be modified by written agreement signed by both parties.

Employer and Employee agree that in the event any provision of this Agreement is deemed to be invalid or unenforceable by any court or administrative agency of competent jurisdiction, or in the event that any provision cannot be modified so as to be valid and enforceable, then that provision shall be deemed severed from the Agreement and the remainder of the Agreement shall remain in full force and effect.

This Agreement in all respects shall be interpreted and entered under the laws of the State of South Carolina.  The language of all parts of this Agreement in all cases shall be construed as a whole, according to its fair meaning, and not strictly for or against any of the parties.

32.     Pursuant to the Severance Agreement, Safety-Kleen paid Pennell a total of $13,733.29 in severance wages running from January 11, 2002 through February 22, 2002 (the "Severance Period").  This figure represented 10 weeks of Pennell's wages.

**Pennell's Post-Termination Acts**

33.     Upon information and belief, Pennell is based in Crystal Clean's Fairless Hills, Bucks County office, which is located less than a half mile from Safety-Kleen's Fairless Hills, Bucks County office.  The Crystal Clean Fairless Hills branch is also less than an hour's

drive from Safety-Kleen's Malvern branch office. Upon information and belief, Pennell is an East Coast Sales Manager for Crystal Clean.

34. Pennell has competed and continues to compete with Safety-Kleen within the Geographic Area covered by the 1985 Agreement.

35. Pennell has solicited, and is continuing to solicit, directly or indirectly, Safety-Kleen's customers within his Geographic Area, or within 95 miles of the Geographic Area, including those for which he was responsible while at Safety-Kleen. Some of Pennell's solicitations of Safety-Kleen customers occurred during the period when he was receiving severance payments pursuant to the Severance Agreement. Specifically, Safety-Kleen has learned that Pennell has solicited the following Safety-Kleen accounts that are located within the Geographic Area, or within 95 miles of the counties within the Geographic Area: East Coast Management (Philadelphia County, Pennsylvania), B&J Machine (Philadelphia County, Pennsylvania), ASAP Copying and Printing (Bucks County, Pennsylvania), Agusta Aviation (Philadelphia County, Pennsylvania), A & M Trucking (Philadelphia County, Pennsylvania), Capital Valve (Philadelphia County, Pennsylvania), Demco (Bucks County, Pennsylvania), East Coast Management (Philadelphia County, Pennsylvania), JR Tool (Philadelphia County, Pennsylvania), Keystone Printing (Philadelphia County, Pennsylvania), Klem Reflector (Philadelphia County, Pennsylvania), Lincoln Garage (Bucks County, Pennsylvania), Mar Auto (Philadelphia County, Pennsylvania), Gallus (Philadelphia County, Pennsylvania), Todays Graphics (Philadelphia County, Pennsylvania), and The Vette Shop (Bucks County, Pennsylvania). Furthermore, Pennell has already succeeded in unlawfully diverting Safety-Kleen business away from Safety-Kleen and to Crystal Clean including the following accounts: Kuffen Electric (Bucks County, Pennsylvania), Allied Tube & Conduit (Philadelphia County,

Pennsylvania), Bensalem Township Municipal Garage (Bucks County, Pennsylvania), Pennfield Precision (Bucks County, Pennsylvania), Simons Precision Performance (Bucks County, Pennsylvania), and Summit Machinery (Bucks County, Pennsylvania).

36. Pennell is in possession of Safety-Kleen's Confidential Information, and, individually and in concert with others, is using and disclosing such Confidential Information for his own financial benefit and the benefit of Crystal Clean in soliciting Safety-Kleen customers.

37. Pennell has misused Confidential Information in at least the following ways: using his knowledge of Safety-Kleen's customers' contract expiration dates to target them during their contract cancellation periods; using his knowledge of Safety-Kleen's customers, contracts with its customers and pricing strategies to tailor competing proposals for identical services to Safety-Kleen's customers; and using his knowledge of Safety-Kleen's marketing strategies and policies to advise Safety-Kleen's customers on strategies for breaching their contracts with Safety-Kleen.

38. Upon information and belief, Pennell's compensation at Crystal Clean is at least in part tied to his success in generating new business for Crystal Clean.

39. Pennell has intentionally inflicted damage on Safety-Kleen's business through his unlawful acts.

## COUNT I
## BREACH OF CONTRACT (1985 AGREEMENT)

40. Safety-Kleen realleges and incorporates paragraphs numbered 1 through 39 as if set forth fully herein.

41. The 1985 Agreement constitutes a valid and enforceable contract between Safety-Kleen and Pennell.

42. Pennell has breached and continues to breach the 1985 Agreement by competing with Safety-Kleen in his Geographic Area or within 95 miles of the Geographic Area, by soliciting Safety-Kleen's customers within the Geographic area or within 95 miles of the Geographic Area, and by misusing and disclosing Safety-Kleen's Confidential Information, all in direct violation of the terms of these agreements.

43. These breaches have caused Safety-Kleen to suffer damages, including the loss of customers, loss of value of Confidential Information, diminishment of Safety-Kleen's competitive standing and other damages, in an amount to be proved at trial but in excess of $75,000.

## COUNT II
## BREACH OF CONTRACT (SEVERANCE AGREEMENT)

44. Safety-Kleen realleges and incorporates paragraphs numbered 1 through 43 as if set forth fully herein.

45. The Severance Agreement constitutes a valid and enforceable contract between Safety-Kleen and Pennell.

46. Pennell has breached the Severance Agreement by soliciting Safety-Kleen's customers in direct violation of the terms of this Agreement.

47. These breaches have caused Safety-Kleen to suffer damages, including the loss of customers, loss of the severance payments made to Pennell while he was unlawfully soliciting customers and competing, interference with client relationships, diminishment of Safety-Kleen's competitive standing and other damages, in an amount to be proved at trial but in excess of $75,000.

## COUNT III
## TORTIOUS INTERFERENCE WITH ACTUAL AND PROSPECTIVE CONTRACTUAL RELATIONS

48. Safety-Kleen realleges and incorporates paragraphs 1 through 47 as if set forth fully herein.

49. Pennell has intentionally and without justification interfered with actual and prospective service contracts between Safety-Kleen and its customers. This interference includes, but is not limited to, Pennell's efforts to induce current customers to breach or terminate existing, valid service contracts or to refrain from entering into or renewing new service contracts.

50. Pennell had actual or constructive knowledge of the existence of these actual or prospective agreements, and possessed Confidential Information relating thereto.

51. In violation of law and contract, Pennell used Confidential Information knowingly, willingly and maliciously to induce Safety-Kleen customers to terminate existing, valid contracts with Safety-Kleen and to fail to enter into or renew new service contracts with Safety-Kleen.

52. Safety-Kleen has been and will continue to be damaged as a result of the loss of such customers due to Pennell's wrongful acts in an amount to be proved at trial but in excess of $75,000.

53. Pennell's interference was and is willful, wanton and in disregard of Safety-Kleen's rights.

### COUNT IV
### MISAPPROPRIATION OF TRADE SECRETS

54. Safety-Kleen realleges and incorporates paragraphs 1 through 53 as if set forth fully herein.

55. While at Safety-Kleen, Pennell acquired Confidential Information which is exclusive to Safety-Kleen and not generally known in the waste removal and disposal industry.

56. Safety-Kleen has protected and maintained the secrecy of its Confidential Information by, among other things, marking documents as "Confidential and Proprietary," restricting distribution, and requiring employees with access to Confidential Information to sign non-disclosure agreements.

57. Safety-Kleen derives actual and potential economic value from its Confidential Information.

58. Safety-Kleen's Confidential Information constitutes trade secrets under Pennsylvania common law.

59. Pennell acquired Safety-Kleen's Confidential Information under circumstances giving rise to a duty to maintain its secrecy and limit its use, including the contractual duties contained in his agreements referenced above.

60. Pennell has used and disclosed Safety-Kleen's Confidential Information to induce Safety-Kleen customers to terminate their relationships with Safety-Kleen, to gain an unfair competitive advantage, and to diminish Safety-Kleen's competitive advantage, all for his own financial benefit.

61. These actions constitute actual and threatened misappropriation of trade secrets in violation of Pennsylvania law.

62. As a result of Pennell's misappropriation, Safety-Kleen has been damaged, and Pennell has been unjustly enriched, in an amount to be proved at trial but in excess of $75,000.

63. Pennell's misappropriation of Safety-Kleen's Confidential Information was willful and malicious.

WHEREFORE, Safety-Kleen prays that this Court:

(a) Require Pennell to disgorge the severance payments (totaling $13,733.29) he received from Safety-Kleen due to his breaches of the Severance Agreement;

(b) Award Safety-Kleen damages for its actual losses and for Pennell's unjust enrichment;

(c) Award Safety-Kleen exemplary damages;

(d) Award Safety-Kleen attorneys' fees;

(e) Award Safety-Kleen its costs of suit; and

(f) Grant any other relief the Court deems just and equitable.

## JURY DEMAND

Plaintiff hereby demands trial by jury pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

_____
Jason K. Cohen
Identification No. 82444
**STRADLEY, RONON, STEVENS & YOUNG, LLP**
2600 One Commerce Square
Philadelphia, PA   19103-7098
(215) 564-8000

Attorneys for Plaintiff,
Safety-Kleen Systems, Inc.

Of Counsel:

Cherie W. Blackburn

Amy Yager Jenkins
**NELSON, MULLINS, RILEY & SCARBOROUGH, LLP**
151 Meeting Street
Suite 600
P.O. Box 1806
Charleston, SC  29401
(843) 853-5200

DATED:  June 3, 2002