IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SAFETY-KLEEN SYSTEMS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. CV-02-03565 |
| v. | ) | |
| | ) | |
| DON R. PENNELL, | ) | |
| | ) | |
| Defendant. | ) | |

---

### DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT

---

Defendant Don R. Pennell ("Pennell") is entitled to summary judgment on all counts of the complaint of plaintiff Safety-Kleen Systems, Inc. ("Safety-Kleen"). The evidence of record reveals no basis for any genuine dispute that: (1) to the extent the restrictive covenants Safety-Kleen asserts are enforceable, Pennell has complied with them; (2) there is no evidence that Pennell has tortiously interfered with any of Safety-Kleen's actual or prospective contractual relations; and (3) there is no evidence that Pennell has misappropriated any Safety-Kleen trade secrets. Pennell is therefore entitled to summary judgment on all counts of Safety-Kleen's complaint.

### FACTS

There can be no genuine dispute as to any of the following material facts:

1.      Pennell was hired by Safety-Kleen in 1985 as a sales representative in its Malvern, Pennsylvania branch. Cmplt ¶ 9; Answer ¶ 9.

2.     When he was hired, Pennell signed an Employment Agreement that purported to prohibit him from competing with Safety-Kleen for one year after the termination of his employment "within 95 miles of the geographical area for which he was assigned the responsibility under Addendum 'A' by Safety-Kleen."  Employment Agreement (Ex. A) § 3.

3.     The territory for which Pennell was assigned responsibility that was listed in Addendum A to his Employment Agreement was "Chester, Lancaster, [and] Montgomery Counties, PA."  Ex. A at Addendum A; Safety-Kleen 30(b)(6) Dep. (Ex. B) at 16-17.

4.     Pennell was made a regional trainer in 1996.  Ex. B at 17, Pennell Dep. (Ex. C) at 8.

5.     Prior to becoming a regional trainer in 1996, Pennell did no sales or service work for Safety-Kleen outside the three-county territory of the Malvern branch.  Ex. C at 24-26.

6.     After Pennell became a regional trainer in 1996 , he was a trainer, and was not responsible for maintaining any particular customer relationships for Safety-Kleen, either inside or outside of the three-county Malvern branch territory.  Ex. B at 105-06, 142-43; Obert Dep. (Ex. D) at 21.

7.     Pennell was terminated by Safety-Kleen on December 14, 2001, and on January 2, 2002, signed an Agreement and General Release under which he was entitled to receive certain severance payments for approximately 15 weeks (unless and until he obtains other employment), and which purported to restrict him from soliciting any Safety-Kleen customers anywhere "within the United States and in any other country in which the Company does business" during the same time period.  Agreement and General Release (Ex. E); Ex. B at 150-51; Ex. C at 31.

8.      Pennell went to work for Heritage-Crystal Clean, LLC ("HCC") on January 21, 2002.  Ex. C at 43-44.

9.      On February 5, 2002, Pennell notified Safety-Kleen that he had accepted new employment.  Ex. B at 150.

10.     Following this notification, Pennell has several communications with Safety-Kleen in any effort to clarify what severance payments he was entitled to given his new employment as of January 21, 2002, the last of which was a telephone conversation that occurred on May 15 or 16, 2002 in which Pennell was told that Safety-Kleen was waiting for information from its payroll department and that Pennell was "not to do anything" and "not to worry" about the severance payments.  Ex. B at 157-64.

11.     Pennell received no further communication concerning his severance payments from Safety-Kleen until this lawsuit was filed.  Ex. B at 164.

12.     HCC is a direct competitor of Safety-Kleen, and Pennell's work for HCC includes selling products and services that compete with those sold by Safety-Kleen.  Cmplt ¶ 1; Answer ¶ 1.

13.     Pennell has not called on any customers for HCC in Chester, Lancaster, or Montgomery Counties.  Ex. B at 60; Ex. C at 60, 63-67; Ex. D at 12; Silver Dep. (Ex. F) at 24-25.

14.     Pennell did not solicit any Safety-Kleen customers for HCC while he was receiving severance payments from Safety-Kleen.  Ex. B at 167; Ex. D at 24-26; Ex. F at 50-51.

15.     Pennell has not improperly encouraged any current Safety-Kleen customer to breach a contract with Safety-Kleen.  Ex. B at 84-85; Ex. D at 28-29; Ex. F at 51-52.

16.    Pennell has not made any use of any materials or information Safety-Kleen alleges constitute trade secrets in his work for HCC.  Ex. B at 130-31; Ex. D at 24; Ex. F at 36-45.

## ARGUMENT

Summary judgment is warranted in this case because facts as to which there can be no genuine dispute show that Safety-Kleen cannot establish the essential elements of any of its claims and that Pennell is therefore entitled to judgment as a matter of law.  *See Fakete v. Aetna, Inc.*, 308 F.3d 335, 337 (3d Cir. 2002).

Specifically, Safety-Kleen cannot prove that Pennell violated any enforceable aspect of either of the two restrictive covenants it has sued upon (Counts I & II).  Safety-Kleen cannot even identify any customer with whom Pennell has interfered with an actual or prospective contractual relationship between the customer and Safety-Kleen -- let alone prove Pennell caused a Safety-Kleen customer to breach or fail to enter into a contract (Count III).  And Safety-Kleen cannot prove that Pennell has disclosed or used any information or material that Safety-Kleen claims is a trade secret (Count IV).

I.    **PENNELL HAS NOT VIOLATED ANY ENFORCEABLE ASPECT OF SAFETY-KLEEN'S RESTRICTIVE COVENANTS.**

A.    **Pennell's 1985 Employment Agreement.**

The agreement Pennell signed when he was first hired by Safety-Kleen in 1985 purported to restrict his post-termination activities not only within the three-county area in which he worked, but also a "95-mile radius" around that territory.  Facts 1-3.  To the extent this agreement attempted to preclude Pennell from taking a job with a competitor outside the area in which he was responsible for Safety-Kleen customers, *i.e.*, the "95-mile radius," it is unenforceable as a matter of law.

"Restrictive covenants are not favored in Pennsylvania and have been historically viewed as a trade restraint that prevents a former employee from earning a living." *Hess v. Gebhard & Co, Inc.*, 808 A.2d 912, 917 (Pa. 2002). Enforcement of covenants is strictly limited to protecting the legitimate interests of the employer, and will not be interpreted to impose overbroad restrictions on the employee. *Id.* at 920. Thus restrictive covenants can be enforceable to protect the employer's relationships with customers that were established by the employee. *Robert Hall of PA, Inc. v. Feight*, 2000 WL 33223697 at *8-9, 48 Pa. D. & C. 4th 129 (Pa. Com. Pl. Jun. 29, 2000). By the same token, however, they are ***not*** enforceable to keep a former employee from contacting customers with whom he had no contact on behalf of his former employer. *Id.* at *10. In *Robert Hall*, the court noted that the defendant had established a relationship with only 16 out of the 760 potential customers within the area covered by the restrictive covenant and held that covenant enforceable only to prevent the defendant from contacting those 16 customers, holding the former employer "has no legitimate business interest in barring [the defendant] from soliciting the 744 firms with whom [the plaintiff] had no relationship." *Id.*

Applying this reasoning to Pennell's case, it is clear that Safety-Kleen has a legitimate interest only in keeping Pennell from soliciting the customer with whom he established a relationship while employed by Safety-Kleen. Pennell was never responsible for establishing or maintaining customer relationships for Safety-Kleen outside of Chester, Lancaster, and Montgomery counties (let alone 95 miles away from this area, a tract that reaches from Connecticut to Virginia and encompasses four of the largest metropolitan areas in the United States (New York, Philadelphia, Baltimore, and Washington, DC). Facts 1-3, 5-6, *supra*.

The "95-mile radius" provision of the Employment Agreement therefore must fail. Without this provision, Safety-Kleen cannot establish a violation of the Employment Agreement, as the evidence is bell clear that Pennell has not solicited any customers for HCC within Chester, Lancaster, or Montgomery counties. Fact 13, *supra*.

### B.    The Severance Agreement.

Safety-Kleen's claim that Pennell breached his severance agreement fares no better. As an initial matter, this agreement is even broader than the first, as it purported to prevent Pennell from soliciting Safety-Kleen customers anywhere in the world where Safety-Kleen does business. Fact 7. As with the Employment Agreement, there is simply no basis in Pennsylvania law to impose a customer-solicitation restriction on Pennell that reaches beyond those customers with whom he actually developed a relationship with while at Safety-Kleen, which customers he has not solicited for HCC.

Moreover, Safety-Kleen has failed to identify even a single customer that Pennell solicited on behalf of HCC while he was receiving severance payments from Safety-Kleen. Fact 14, *supra*. Nor can it put forth any facts to support a claim that Pennell wrongfully received or retained any severance payments. Facts 9-11, *supra*.

### II.    PENNELL HAS NOT TORTIOUSLY INTERFERED WITH ANY ACTUAL OR PROSPECTIVE SAFETY-KLEEN CONTRACTS.

Among the essential elements a plaintiff must establish to prevail on a claim of tortious interference, of course, is damage as a result of the defendant's interference with either an existing contract or "the reasonable likelihood or probability of an enforceable contractual relationship." *Glenn v. Point Park College*, 272 A.2d 895, 898 (1971). Yet none of the three witnesses identified by Safety-Kleen as having knowledge of the facts of this case could identify

a single customer who breached a contract with Safety-Kleen at Pennell's urging. Fact 15, *supra.*

More fundamentally, this tort does not allow a competitor to sue one of its rivals (or their salesmen) for soliciting business from a customer who happens to be under a service contract. Safety-Kleen must not only establish interference by Pennell, but that such interference was not "privileged." *Cloverleaf Development, Inc. v. Horizon Financial*, 500 A.2d 163, 167-68 (Pa. Super. 1985). This essentially means that the conduct needs to be "improper," and otherwise legitimate competition for business does not fall into this category. *See id.* at 168 (noting that what is "improper" for these purposes is determined by "the rules of the game which society has adopted"). Unless the rules adopted by society make it "improper" to solicit business in any industry where contracts are used -- imagine a newspaper suing its cross-town rival for seeking subscriptions from those it has already signed up -- Pennell's activities on behalf of HCC to secure business from Safety-Kleen customers cannot give rise to this tort as a matter of law. To hold otherwise would be to allow this cause of action to swallow legitimate business competition whole.

### III. PENNELL HAS NOT MISAPPROPRIATED ANY SAFETY-KLEEN TRADE SECRETS.

Safety-Kleen likewise simply has no evidence to support its claim that Pennell misappropriated any of its trade secrets -- even assuming, contrary to fact, that the items it claims were misappropriated do in fact constitute trade secrets.

In order to establish a claim for misappropriation of a trade secret, the plaintiff must show that the defendant has disclosed or used the alleged trade secret. *See, e.g., A.M. Skier Agency, Inc. v. Gould*, 747 A.2d 936, 940 (Pa. Super. 2000). Yet neither the testimony of Safety-Kleen's witnesses, nor anything else in the record, identifies any such disclosure or misuse. Fact

16, *supra*.  Any claim in this regard by Safety-Kleen is founded on nothing more than conjecture, speculation, and innuendo.  There simply is no evidence.

## **CONCLUSION**

For the reasons set forth above, Pennell respectfully requests that this Court enter summary judgment in his favor on all counts of Safety-Kleen's complaint.

Dated: February 24, 2003                    Respectfully submitted,


_____
Sherry A. Swirsky (PA I.D. No. 27814)
SCHNADER HARRISON SEGAL & LEWIS LLP
1600 Market Street, Suite 3600
Philadelphia, Pennsylvania 19103-7286
Telephone:    (215) 751-2182
Facsimile:     (215) 972-7475

Timothy A. Duffy
KIRKLAND & ELLIS
200 East Randolph Drive
Chicago, Illinois 60601
Telephone:    (312) 861-2445
Facsimile:     (312) 861-2200

ATTORNEYS FOR DEFENDANT
DON R. PENNELL