IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SAFETY-KLEEN SYSTEMS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION No. CV-02-03565 |
| v. ) | |
| ) | Judge Charles R. Weiner |
| DON R. PENNELL, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION
TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Safety-Kleen's motion for summary judgment is founded on misrepresentations of the facts and distortions of the law. There is no basis for any full or partial grant of summary judgment in Safety-Kleen's favor. Indeed, as demonstrated by Pennell's motion for summary judgment, the opposite is true. Safety-Kleen's motion should be denied and Pennell's motion for summary judgment should be granted.

**SAFETY-KLEEN MISREPRESENTS THE FACTS**

Most of Safety-Kleen's statement of facts is dedicated to establishing what Pennell has freely admitted: that he has solicited customers within a "95-mile radius" outside of the actual territory in which he worked for Safety-Kleen when he signed his non-compete agreement. SK Mem. at 2-5. What Safety-Kleen admits by negative implication is that Pennell has *never* solicited any customer within the three-county area coterminous with his Safety-Kleen territory. There is no basis on which there could possibly be any finding that Pennell violated his

non-compete agreement other than a violation of the overbroad and unenforceable "95-mile radius" provision.[1]

The few allegations Safety-Kleen makes that seem to be detrimental to Pennell's case are simply wrong. For example, Safety-Kleen alleges that Pennell violated his Severance Agreement by "attempting to persuade former Safety-Kleen employee Len Venezia to begin working with HCC." SK Mem. at 5. This is false. Safety-Kleen cites to testimony in which Pennell said that he had discussions with Venezia about coming to work for HCC while he (Pennell) was being paid severance by Safety-Kleen. Pennell Dep. at 99 (SK Ex. A). This was a conversation about *Pennell* coming to work for HCC -- a conversation against which there is no prohibition in any agreement -- *not* a conversation about soliciting Venezia. Pennell could hardly have solicited Venezia, since Venezia starting working at HCC on January 18, 2002, Venezia Dep. at 33 (Ex. A, attached hereto), which was *before* Pennell started working for HCC on January 21, 2003. Pennell Dep. at 43 (Pennell Ex. C)[2]. Safety-Kleen's allegation to the contrary has no support in the record.

Safety-Kleen also alleges that Pennell retained and used "a substantial amount of Safety-Kleen's confidential business materials until October of 2002." SK Mem at 6. While it is true that Pennell had a box full of old Safety-Kleen materials in his basement that he did not return to Safety-Kleen until this lawsuit was filed, it is also uncontradicted that "[h]e neither

---

[1] Note that the "95-mile" radius is not a restriction that runs 95 miles from a particular Safety-Kleen office or location, but 95 miles *outside* of the three-county area in which he actually worked. As explained below, there is no basis for prohibiting a former employee from competing *outside* of the area in which he had contact with customers for the former employer.

[2] The citation "Pennell Ex. C" and similar citations herein refer to the exhibits to Defendant's Motion for Summary Judgment.

reviewed, consulted, or used in any other way for some time prior to, or at any time after, the termination of his employment with Safety-Kleen in December of 2001." Pennell Responses to Requests to Admit at 1 (SK Ex. G). Safety-Kleen's supposed support for its claim is unavailing. The sole citation Safety-Kleen provides for the proposition that Pennell *used* any such materials in his work for HCC -- an essential element of any claim of misappropriation -- is testimony in which Pennell verifies for Safety-Kleen counsel that he has used a list showing expiration dates of some of Safety-Kleen's customers' contracts obtained by HCC from the Internet. *See* SK Mem. at 6; Pennell Dep. at 86-87; Venezia Dep. at 10-11 (Ex. A). This testimony has nothing to do with Safety-Kleen's contention that Pennell retained and *used* any Safety-Kleen materials. Safety-Kleen's allegation is cut from whole cloth.

### SAFETY-KLEEN DISTORTS THE LAW

Safety-Kleen's legal arguments perpetuate its factual misrepresentations and add what can charitably be described as a distorted view of the law.

### Safety-Kleen's Restrictive Covenant is Unenforceable

Far from establishing that it is entitled to summary judgment on its breach of contract claim, Safety-Kleen's legal gymnastics demonstrate that it *cannot* enforce the "95-mile radius" provision in Pennell's employment agreement.

Again, Safety-Kleen spends several pages arguing the obvious. SK Mem. at 7-10. Its brief quickly runs off the rails, however, when it attempts to argue that the scope of the restrictive covenant *does not matter* for purposes of deciding whether the restrictions in the agreement are reasonable. SK Mem. at 10-11. This proposition is so absurd that it is hard to believe Safety-Kleen is actually arguing it to the Court.

Safety-Kleen itself admits that one of the four requirements it must prove in order to enforce a restrictive covenant against Pennell is that "the covenant must be reasonably limited

in both time and geographic scope." SK Mem. at 9 (citing *Nation Business Services, Inc. v. Wright*, 2 F. Supp. 2d 701, 707 (E.D. Pa. 1998)). Safety-Kleen is obviously trying to enforce its contract against Pennell, and therefore must prove the restrictions are reasonable. This is hornbook non-competition law in every jurisdiction in the country where such agreements are permitted.

Notwithstanding -- much less explaining away -- this basic proposition, Safety-Kleen cites three cases claiming that they stand of the proposition that because Safety-Kleen is only seeking damages from Pennell and not an injunction against him, the reasonableness of the covenant is not an issue. SK Mem. at 10-11 & n.1. This argument is without support in the law, and Safety-Kleen's cases do not so hold.

Safety-Kleen cites one case from 1969, *Krauss v. M. L. Claster & Sons, Inc.*, 254 A.2d 1 (Pa. 1969), in which an employee sued his employer to recover payments allegedly due under his employment contract. As a defense to the employee's claim, the employer asserted that the employee had breached the restrictive covenant in the contract, to which the employee replied that the restrictions therein were unreasonable. The Pennsylvania Supreme Court held that "where the breach of a covenant not to compete is raised as a legal defense to an action at law, the question of whether the covenant is too harsh to be enforced in equity is irrelevant." *Boyce v. Smith-Edwards-Dunlap Co.*, 580 A.2d 1382, 1386-87 (Pa. Super. 1990) (summarizing *Krauss*). This makes perfect sense. If the employee is alleging a breach of contract by the employer yet he has breached the contract as written, he cannot claim the benefit of the contract on one hand and also argue it is unreasonable on the other. Pennell's case would be analogous to *Krauss* if he were suing Safety-Kleen for money owed and also claiming he need not have abided by the agreement as written since it was overbroad. That is not this case, and *Krauss*

4

provides no support for Safety-Kleen's proposition that actions for damages for alleged violations of a non-compete can ignore the reasonableness of the scope of that non-compete.

In *Boyce*, the second case cited by Safety-Kleen, the facts were the same as in *Krauss* except that while the plaintiff in *Krauss* was suing for additional compensation allegedly owed, the plaintiff in *Boyce* was suing for "back vacation pay." *Boyce*, 580 A.2d at 1387. Moreover, the claim of error in *Boyce* was that the trial court had improperly allowed the defendant to present evidence of the plaintiffs' breach of the same agreement he was trying to enforce against his former employer. *Id.* at 1386-87. *Boyce* provides no support for Safety-Kleen's argument that an employer can attempt to enforce a restrictive covenant -- whether by seeking an injunction or by seeking damages -- without demonstrating the reasonableness of the restrictions it seeks to hold the defendant liable for violating.

Safety-Kleen's final authority, *Mrozek v. Eiter*, 805 A.2d 535 (Pa. Super. 2002), is even more off-point. In *Mrozek*, the employer brought suit to enforce a non-compete, the trial court granted a temporary injunction but then, on hearing for a preliminary injunction, ruled that the covenant was overbroad and limited it to a restriction on contact with the former employer's customers (as opposed to being able to work for the competition at all), reduced the two-year term to nine months, and dismissed the employer's interference-with-contract claim. *Id.* at 537. That decision was appealed, and sustained, except that the appellate court reinstated the two-year restriction. *Id.* at 538. The employer then sought attorney's fees from the employee under a provision in the contract that purported to provide for payment of same. *Id.* The trial court awarded the employer fees, and the employee appealed. *Id.* The appellate court reversed on the ground that there had been no finding by the trial court that the covenant, *as reformed*, had been violated. *Id.* at 539-40. In passing, the Court noted that *if* this issue of enforceability had arisen

5

as it had in *Krauss* and *Boyce* (from the employer defense to a claim by the employee under the contract), the result would have been different because then the question would have been whether the employee violated the contract as written, not whether he violated it as reformed. *Id.* at 539. *Mrozek* is irrelevant to Safety-Kleen's argument that it can seek damages without demonstrating the reasonableness of its restrictive covenant.

Neither the dicta in *Mrozek*, nor the holdings of *Krauss* or *Boyce* are of any help to Safety-Kleen in this case. Indeed, Safety-Kleen's argument flies in the face of cases assessing the reasonableness of a restrictive covenant in ruling on a claim for damages for an alleged breach thereof. *See*, *e.g.*, *Worlwide Auditing Services, Inc. v. Richter*, 587 A.2d 772, 776-78 (assessing reasonableness of restriction in case where damages had been awarded). Indeed, the notion that Safety-Kleen, which could have sought injunctive relief against Pennell had it chose to do so, can sue for damages only and thereby escape scrutiny of the reasonableness of its restrictive covenant is patently contrary to law, equity, and common sense.[3]

When Safety-Kleen does get around to addressing the enforceability of the 95-mile radius in its restrictive covenant, it offers no authority or reasoning for restricting Pennell's activities outside the three-county area he has voluntarily stayed away from. Indeed, Safety-

---

[3] Safety-Kleen's confusion is compounded by its assumption that because it is asking for damages, it is prosecuting an action "at law." The analysis is not so simple. While the remedy sought can inform the somewhat arcane question of whether a cause of action arises in law or equity, it does not control the issue. Enforcement of a restrictive covenant is inherently a question of equity, regardless of the remedy sought, and "determining whether the burden placed on the employee is unreasonable" is inherently as exercise in equity based on public policy considerations. *See*, *e.g.*, *Hess v. Gebhard & Co., Inc.*, 808 A.2d 912, 917-18 (Pa. 2002). The proposition that these concerns can be swept aside by seeking damages is both illogical and pernicious. *See Barrows v. Jackson*, 346 U.S. 249, 258 (1953) (refusing, in the context of a racial restrictive covenant, to allow a state court to "coerce respondent to respond in damages for failure to observe a restrictive covenant that this Court would deny [the state court] the right to enforce in equity").

6

Kleen's authorities stand for the contrary proposition: that the geographic scope of a restrictive covenant must be limited to the area in which the employee actually worked for the old employer, and *not* include large swaths of territory out of which there is no reason to keep the employee other than to restrict competition. *See Nation Business Services*, 2 F. Supp. 2d at 708 (upholding nationwide restriction because employee "had extensive contacts with customers all over the nation"); *Records Center, Inc. v. Comprehensive Management, Inc.*, 525 A.2d 433, 434-45 (Pa. Super. 1987) (enforcing a multi-state restriction not against all competition, but simply contact with former employer's customers because that is where the customers serviced by the former employees were located); *Sidco Paper Co. v. Aaron*, 351 A.2d 250 (Pa. 1976) (holding that territorial restrictions must be limited to areas in which the employer has a legitimate basis for restricting activity and allowing enforcement within a territory broader than where the employee actually worked only because it was impossible to define the geography more narrowly).

As explained in Pennell's motion for summary judgment, the law is clear that there is no basis to enforce the 95-mile radius Safety-Kleen seeks to impose upon Pennell. *See Robert Hall of PA, Inc. v. Feight*, 2000 WL 33223697 at *8-9, 48 Pa. D. & C. 4th 129 (Pa. Com. Pl. Jun. 29, 2000) (restrictive covenant not enforceable to prevent competition for customers with whom employee had no contact on behalf of his former employer). Safety-Kleen has not offered one iota of record evidence to show that, since joining HCC, Pennell has darkened the door of any customer whom he called on while working for Safety-Kleen. Not only does this failing

7

warrant denial of Safety-Kleen's motion, it mandates granting Pennell's motion for summary judgment.[4]

Safety-Kleen's arguments under the Severance Agreement are equally spurious. Most telling is the statement -- upon which their entire breach of contract claim rests -- that "[the beginning of [Pennell's] employment inevitably involved contact and solicitation of customer within the Geographic Area." SK Mem. at 19. No citation is provided to support the assertion that Pennell solicited customers for HCC while he was receiving any severance payments from Safety-Kleen, and there is no evidence in the record to support this claim. *See* Pennell Mem. in Supp. at 3, ¶ 14 and exhibits cited therein.

**There Has Been No Misappropriation of Trade Secrets**

Safety-Kleen's misappropriation of trade secrets claims runs aground on the simple fact that there is absolutely no support for the claim that Pennell has used any Safety-Kleen information in his work at HCC, thus leaving Safety-Kleen unable to establish an essential element of this claim. *See* Pennell Mem. in Supp. at 4, 7-8.

In an effort to make a showing on this issue, Safety-Kleen cites two bits of testimony. *See* SK Mem. at 22. The first is the testimony discussed above that involved Pennell telling Safety-Kleen counsel that HCC had a list of Safety-Kleen contract expiration dates it had

---

[4] It is also worth noting that even if the 95-mile radius provision were enforceable -- which it is not -- Safety-Kleen still has not established the absence of material factual disputes with regard to whether the covenants are enforceable, as the entire question of whether Safety-Kleen's legitimate business interests could support *any* restrictive covenants is debatable. While Safety-Kleen can argue that Pennell had an "influential position with Safety-Kleen [that] subsequently provided him with a unique ability to compete within the area based upon his customer contact and knowledge of Safety-Kleen's customer information and business practices," SK Mem. at 16, these are disputed assertions, about which there is ample evidence to the contrary. *See*, *e.g.*, Pennell Dep. at 80-81 (business for HCC primarily generated through cold calls on customer about whom Pennell had no prior knowledge).

obtained from the Internet. *See* SK Mem. at 6; Pennell Dep. at 86-87; Venezia Dep. at 10-11 (Ex. A). In essence, Safety-Kleen is arguing that information it posted on the Internet for all the world to see is somehow nevertheless a trade secret that it can prosecute competitors for using.

The second snippet is from the testimony of Marty Silver, one of Safety-Kleen's employees, who was asked if he was aware "of any specific occasions in which Mr. Pennell has used any of Safety-Kleen's customer lists, pricing lists, or marketing strategies in his job for Heritage Crystal Clean?" SK Ex. D at 43. His answer was that "I believe that Heritage's marketing scheme is very similar to Safety-Kleen's marketing scheme." *Id.* This is not evidence of misappropriation of trade secrets by Pennell, as amply evidenced by the testimony that immediately follows (and was not included in the exhibits filed by Safety-Kleen), in which Silver admitted that he knew of no specific customers or occasions where Pennell had used any Safety-Kleen confidential information. Silver Dep. at 46-47 (Ex. B, attached hereto).

**There Has Been No Tortious Interference With Contracts**

Safety-Kleen's final argument is that it is entitled to summary judgment on its tortious interference claims because Pennell has solicited Safety-Kleen customers under contract and some of those customers have switched to HCC. SK Mem. at 23-24. Yet, as explained in Pennell's memorandum in support of his motion for summary judgment, there is simply no evidence in the record that even a single customer has actually breached a contract with Safety-Kleen at Pennell's urging. *See* Pennell Mem. in Supp. at 3, ¶ 15 and exhibits cited therein. More fundamentally, Safety-Kleen fails to take account for the well-established proposition that this tort cannot be used to prohibit legitimate competition for customers. *See*, *e.g.*, *Cloverleaf Development, Inc. v. Horizon Financial*, 500 A.2d 163, 167-68 (Pa. Super. 1985) (legitimate competition for business does not amount to tortious interference).

## **CONCLUSION**

For the foregoing reasons, Pennell respectfully requests that Safety-Kleen's motion for summary judgment be denied.

Dated: March 10, 2003

Respectfully submitted,

_____
Sherry A. Swirsky (PA I.D. No. 27814)
SCHNADER HARRISON SEGAL & LEWIS LLP
1600 Market Street, Suite 3600
Philadelphia, Pennsylvania 19103-7286
Telephone:   (215) 751-2182
Facsimile:   (215) 972-7475

Timothy A. Duffy
KIRKLAND & ELLIS
200 East Randolph Drive
Chicago, Illinois 60601
Telephone:   (312) 861-2445
Facsimile:   (312) 861-2200

ATTORNEYS FOR DEFENDANT
DON R. PENNELL