IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SAFETY-KLEEN SYSTEMS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION NO. CV-02-03565 |
| v. ) | |
| ) | Judge Charles R. Weiner |
| DON R. PENNELL, ) | |
| ) | |
| Defendant. ) | |

_____

**DEFENDANT'S REPLY IN SUPPORT OF
HIS MOTION FOR SUMMARY JUDGMENT**
_____

Safety-Kleen's response to Pennell's motion for summary judgment fails to show any genuine dispute as to the facts as set forth by Pennell. Most of the facts set out by Pennell go unchallenged by Safety-Kleen. Where Safety-Kleen does offer up purported disputes, it fails to support its position with viable evidence of record. Safety-Kleen's legal arguments are similarly unconvincing, as they consistently refuse to recognize or account for fundamental principles of the law of fair competition. In sum, the Court should grant Pennell's motion for summary judgment.

**UNDISPUTED FACTS**

For all its rhetoric, Safety-Kleen fails to take direct issue with any of the 16 statements of fact set forth by Pennell in his Memorandum of Law in Support of His Motion for Summary Judgment. Specifically, Safety-Kleen does not dispute that from 1985 (when he signed his employment agreement) to 1996 he did ***no sales or service work for Safety-Kleen outside of Chester, Lancaster, and Montgomery counties***. *See* Def's Mem. at 1-2 (Facts 1-5).

In other words, Pennell did no work in the territory encompassed by the "95-mile radius" provision of Safety-Kleen's restrictive covenant. Nor does Safety-Kleen dispute that from 1996 until his termination in 2001, Pennell was not responsible for maintaining *any* particular customer relationships for Safety-Kleen, either inside or outside of the three-county area. *See id.* at 2 (Facts 4-6). In other words, to the extent Pennell did any work in the 95-mile radius area, it was not work that involved relationships with customers.

Similarly, Safety-Kleen offers no argument (much less any record evidence) to dispute that Pennell notified Safety-Kleen he had accepted a job with Heritage Crystal Clean ("HCC") and spent several weeks trying to determine whether he had received the proper severance payments under the Severance Agreement in light of his new job. *See id.* at 2-3 (Facts 7-10). Nor does Safety-Kleen dispute that the last communication it had with Pennell on this issue -- prior to suing him several months later -- was that he was "not to do anything" and "not to worry" about his severance payments. *See id.* at 3 (Facts 10-11).

Perhaps the most critical fact with which Safety-Kleen takes no issue is that Pennell **has not called on any customers for HCC in Chester, Lancaster, or Montgomery counties**. *See id.* at 3 (Fact 13). The best Safety-Kleen can do is criticize Pennell for contacting customers in counties "directly next to the counties recited in his Employment Agreement." SK Mem. in Opp. at 8-9. This only highlights the undisputed fact that Pennell has voluntarily kept himself *outside* the area in which he had any regular contact with Safety-Kleen customers.

Safety-Kleen does indirectly dispute three key facts set forth by Pennell: (1) that he did not solicit any Safety-Kleen customers while receiving severance payments from Safety-Kleen; (2) that he has not improperly encouraged any Safety-Kleen customer to breach a contract; and (3) that he has not made any use of any Safety-Kleen confidential or trade secret

2

information.  *See* Def's. Mem. in Supp. at 3-4 (Facts 14-16).  But Safety-Kleen offers *no* viable record evidence to support its position on *any* of these key points.

On the issue of whether Pennell solicited Safety-Kleen customers while receiving severance payments in violation of his severance agreement, Safety-Kleen claims that Pennell received a severance payment for the first week he was employed at HCC and that "[t]he beginning of his employment with HCC inevitably involved contact and solicitation of customers within the Geographic Area."  SK Mem. in Opp. at 10.  Putting aside the fact that when Pennell offered to refund any overpayment of severance he was told "not to worry about it," Safety-Kleen provides no citation to the record to support its assertion that Pennell "inevitably" contacted Safety-Kleen customers during this week.  There is no support for this allegation, and Safety-Kleen cannot avoid summary judgment by making unfounded assumptions.[1]

On the issue of whether Pennell has encouraged any Safety-Kleen customers to breach their contracts, Safety-Kleen likewise fails to come forward with any viable record evidence to dispute Pennell's statement of facts or to preclude summary judgment.  The best it can do is *argue* that Pennell solicited Safety-Kleen customers and that some of these customers were under contract.  SK. Mem. in Opp. at 11.  This does not establish that Pennell encouraged anyone to breach a contract, much less show a claim for tortious interference.  Safety-Kleen does

---

[1] Safety-Kleen also asserts that Pennell violated his severance agreement by soliciting Mr. Venezia to work for HCC.  SK Mem. in Opp. at 10.  Here Safety-Kleen does provide a citation -- to testimony wherein Pennell says he did have a conversation with Venezia during the time he was receiving severance payments.  A conversation does not equal solicitation for employment, especially here, where the conversion was about Pennell coming to work at HCC with Venezia, *not* Venezia coming to work at HCC with Pennell.  As explained in Pennell's opposition to Safety-Kleen's motion for summary judgment, Venezia was hired by HCC *before* Pennell, so Pennell could hardly have solicited him, and there was no prohibition on Pennell speaking to a prospective employer during the severance period.  Def's Mem. in Opp. at 2.

3

not provide evidence of even one customer actually having **breached** an agreement, evidence of Pennell **encouraging** any such breach, or demonstrate any **damage** therefrom. Again, all we have is Safety-Kleen's conjecture and speculation, not evidence.

On the issue of whether Pennell used Safety-Kleen confidential or trade secret information -- an essential element of its misappropriation claim -- the proof is again nowhere to be found. Safety-Kleen asserts: "Pennell has misused the confidential information, individually and in concert with others." SK Mem. in Opp. at 13. No citation is provided to support this statement. Instead, Safety-Kleen says this misuse is "demonstrated" by Pennell's targeting of Safety-Kleen customers during their contract cancellation periods, his tailoring of pricing proposals, and his advice to customers on how to breach contracts. To support this litany of allegations, Safety-Kleen provides two citations that provide **no** support for them.

The first citation is to Pennell telling Safety-Kleen counsel that HCC had a list of Safety-Kleen contract expiration dates it had obtained from the Internet. *See* SK Mem. in Supp. at 6; Pennell Dep. at 86-87; Venezia Dep. at 10-11 (Ex. A to Def's Mem. in Opp. This Internet list is not confidential information. The second citation is to the testimony of a Safety-Kleen employee, who said, when asked if he was aware "of any specific occasions in which Mr. Pennell has used any of Safety-Kleen's customer lists, pricing lists, or marketing strategies in his job for Heritage Crystal Clean?" that "I believe that Heritage's marketing scheme is very similar to Safety-Kleen's marketing scheme." Silver Dep. at 43 (Ex. D to SK Mem. in Supp.). This is not evidence of misuse of any specific information, and it ignores this same witness's later admission that he knew of no specific customers or occasions where Pennell had used any Safety-Kleen confidential information. Silver Dep. at 46-47 (Ex. B to Def's. Mem. in Opp.).

In sum, Safety-Kleen has responded to Pennell's motion for summary judgment without raising a single genuine issue of fact.

## ARGUMENT

Nor do Safety-Kleen's legal arguments provide any justification for denying Pennell's motion for summary judgment.

### Safety-Kleen's Restrictive Covenant Is Unenforceable

Safety-Kleen goes to great lengths to argue that the reasonableness of the 95-mile radius provision in its restrictive covenant is *irrelevant* to the case. SK Mem. in Opp. at 5-6. This argument is obviously wrong. Safety-Kleen itself has admitted that one of the four requirements it must prove in order to enforce a restrictive covenant against Pennell is that "the covenant must be reasonably limited in both time and geographic scope." SK Mem. in Opp. at 6 (citing *Nation Business Services, Inc. v. Wright*, 2 F. Supp. 2d 701, 707 (E.D. Pa. 1998)). By its own admission, Safety-Kleen must prove the restrictions are reasonable. This is obvious and unarguable.

Yet Safety-Kleen takes a contrary view, citing three cases it claims stand for the proposition that because Safety-Kleen is seeking only damages from Pennell and not an injunction against him, the reasonableness of the covenant is not an issue. SK Mem. in Opp. at 5-6. These cases say no such thing. In one of Safety-Kleen's cases, *Krauss v. M. L. Claster & Sons, Inc.*, 254 A.2d 1 (Pa. 1969), an employee sued his employer to recover payments allegedly due under his employment contract. As a defense to the employee's claim, the employer asserted that the employee had breached the restrictive covenant in the contract, to which the employee replied that the restrictions therein were unreasonable. The Pennsylvania Supreme Court held that "where the breach of a covenant not to compete is raised as a legal defense to an action at law, the question of whether the covenant is too harsh to be enforced in equity is

5

irrelevant." *Boyce v. Smith-Edwards-Dunlap Co.*, 580 A.2d 1382, 1386-87 (Pa. Super. 1990) (summarizing *Krauss*). This makes perfect sense. If the employee is alleging a breach of contract by the employer yet he has breached the contract as written, he cannot claim the benefit of the contract on one hand and also argue it is unreasonable on the other. Pennell's case would be analogous to *Krauss* if he were suing Safety-Kleen for money owed and also claiming he need not have abided by the agreement as written since it was overbroad. That is not this case, and *Krauss* provides no support for Safety-Kleen's proposition that actions for damages for alleged violations of a non-compete can ignore the reasonableness of the scope of that non-compete.

In *Boyce*, the second case cited by Safety-Kleen, the facts were the same as in *Krauss*, except that while the plaintiff in *Krauss* was suing for additional compensation allegedly owed, the plaintiff in *Boyce* was suing for "back vacation pay." *Boyce*, 580 A.2d at 1387. Moreover, the claim of error in *Boyce* was that the trial court had improperly allowed the defendant to present evidence of the plaintiff's breach of the same agreement he was trying to enforce against his former employer. *Id.* at 1386-87. *Boyce* provides no support for Safety-Kleen's argument that an employer can attempt to enforce a restrictive covenant -- whether by seeking an injunction or by seeking damages -- without demonstrating the reasonableness of the restrictions it seeks to hold the defendant liable for violating.

Safety-Kleen's final authority, *Mrozek v. Eiter*, 805 A.2d 535 (Pa. Super. 2002), is even more off-point. In *Mrozek*, the employer brought suit to enforce a non-compete, the trial court granted a temporary injunction but then, on hearing for a preliminary injunction, ruled that the covenant was overboard and limited it to a restriction on contact with the former employer's customers (as opposed to a prohibition on being able to work for the competition at all), reduced the two-year terms to nine months, and dismissed the employer's interference-with-contract

6

claim. *Id.* at 537. That decision was appealed, and sustained, except that the appellate court reinstated the two-year restriction. *Id.* at 538. The employer then sought attorney's fees from the employee under a provision in the contract that purported to provide for payment of same. *Id.* The trial court awarded the employer its fees, and the employee appealed. *Id.* The appellate court reversed on the ground that there had been no finding by the trial court that the covenant, **as reformed,** had been violated. *Id.* at 539-40. In passing, the court noted that **if** this issue of enforceability had arisen as it had in *Krauss* and *Boyce* (from the employer defense to a claim by the employee under the contract), the result would have been different, because then the question would have been whether the employee violated the contract as written, not whether he violated it as reformed. *Id.* at 539. *Mrozek* is irrelevant to Safety-Kleen's argument that it can seek damages without demonstrating the reasonableness of its restrictive covenant.

   Neither the dicta in *Mrozek*, nor the holdings of *Krauss* or *Boyce*, are of any help to Safety-Kleen in this case. Indeed, Safety-Kleen's argument flies in the face of cases assessing the reasonableness of a restrictive covenant in ruling on a claim for damages for an alleged breach thereof. *See*, *e.g.*, *Worldwide Auditing Services, Inc. v. Richter*, 587 A.2d 772, 776-78 (Pa. Super. 1991) (assessing reasonableness of restriction in case where damages had been awarded). Indeed, the notion that Safety-Kleen, which could have sought injunctive relief against Pennell had it chose to do so, can sue for damages only and thereby escape scrutiny of the reasonableness of its restrictive covenant is patently contrary to law, equity, and common sense.[2]

---

[2] Safety-Kleen's confusion is compounded by its assumption that because it is asking for damages, it is prosecuting an action "at law." The analysis is not so simple. While the remedy sought can inform the somewhat arcane question of whether a cause of action arises in law or equity, it does not control the issue. Enforcement of a restrictive covenant is inherently a
(Continued…)

As a fallback, Safety-Kleen argues that 95-mile radius provision is enforceable, SK Mem. in Opp. at 6-8. But Safety-Kleen cites no case holding a competitive restriction that goes beyond the territory in which an employee had customer relationships is enforceable. In the two cases Safety-Kleen does cite, SK. Mem. in Opp. at 7-8, in one, the employee was found to have "had extensive contacts with customers all over the nation" so as to justify a national non-compete, *National Business Service*, 2 F. Supp. 2d at 708, and in the other, the court **struck down** a prohibition on competitive employment within 100 miles because the employer had not shown this territorial restriction was "reasonably necessary" to protect its interest. *Morgan's Home Equipment Corp., v. Martucci*, 136 A.2d 838, 846-47 (Pa. 1957).

Instead, Safety-Kleen cites testimony it claims establishes that Pennell did have significant customer contact in the 95-mile area. SK. Mem. in Opp. at 7-8. Any objective reading of this testimony shows Safety-Kleen has stretched its import beyond the breaking point. What its witness did say was that, during the *fives years* Pennell was a regional trainer for Safety-Kleen, he may have spent *four to six weeks* in the Fairless Hills branch, Molander Dep. at 23 (SK Mem. in Opp. Ex. B), that when he did go to customer locations, he did it as a trainer of another salesperson, not to make sales himself, *id.* at 106, and that Pennell's work several years ago in the three-county area as a salesman would not give him any information about a particular customer he might be calling on today *outside* of that territory. *Id.* at 46.

---

question of equity, regardless of the remedy sought, and "determining whether the burden placed on the employee is unreasonable" is inherently an exercise in equity based on public policy considerations. *See*, *e.g.*, *Hess v. Gebhard & Co., Inc.*, 808 A.2d 912, 917-18 (Pa. 2002). The proposition that these concerns can be swept aside by seeking damages is both illogical and pernicious. *See Barrows v. Jackson*, 346 U.S. 249, 258 (1953) (refusing, in the context of a racial restrictive covenant, to allow a state court to "coerce respondent to respond in damages for failure to observe a restrictive covenant that this Court would deny [the state court] the right to enforce in equity").

In a final grasp at straws, Safety-Kleen suggests the 95-mile radius provision is enforceable because Pennell is not competing 90 miles away, but 5 miles away. While it is true that Pennsylvania courts will narrow an overbroad covenant, they will do so only to restrict it to an area that corresponds to the interest implicated by the employee's activities, not to make an unenforceable provision a little less unenforceable. As Safety-Kleen's own authority for this suggestion holds, the restriction must be as narrow as possible and can only include customers or geography not implicated by the employee's work for the employer when it is *impossible* to craft a narrower restriction. *Sidco Paper Co. v. Aaron*, 351 A.2d 250, 254 (Pa. 1976). Here Safety-Kleen itself has already crafted a more narrow restriction: the three-county area *without* the gratuitous addition of a "95-mile radius."

### There Has Been No Tortious Interference With Contracts

Safety-Kleen presents no legal arguments to justify denial of Pennell's motion for summary judgment on this claim. All it does it rest upon its unsupported assertions of "fact," which, as described above, do not show any breach of any contract -- encouraged by Pennell or otherwise -- and, obviously, no damage flowing from any such breach. SK Mem. in Opp. at 11. Moreover, Safety-Kleen offers no response whatsoever to the points of law raised in Pennell's opening memo to the effect that calling on a customer -- even one who happens to be under contract -- on behalf of a competitor does not amount to tortious interference. *See*, *e.g.*, *Cloverleaf Development, Inc. v. Horizon Financial*, 500 A.2d 163, 167-68 (Pa. Super. 1985) (legitimate competition for business does not amount to tortious interference). In sum, Safety-Kleen has offered no reason to forgo Pennell's request for summary judgment on this claim.

### There Has Been No Misappropriation of Trade Secrets

Safety-Kleen argues its misappropriation claim in the same manner: by ignoring the law and resting on unsupported allegations of fact. SK Mem. in Opp. at 12-13. Safety-

9

Kleen's only argument -- unsupported by the facts -- is that Pennell has "inevitably disclosed" secret Safety-Kleen information. If this were true, discovery would have revealed some evidence of it. To the extent Safety-Kleen is attempting to classify this case as one where a court can impose competitive restrictions on the rationale that even a well-intentioned employee would "inevitably" disclose information given his role at each firm, that argument must be rejected. Safety-Kleen has not even attempted to make any of the showings required to reach such a conclusion, and Pennsylvania courts will reach that conclusion only on a showing of specific, technical information that might be passed from firm to firm, not simply business knowledge or the techniques of salesmanship. *See*, *e.g.*, *Oberg Industries, Inc. v. Finney*, 555 A.2d 1324, 1326-28 (reversing injunction granted on grounds of inevitable disclosure where there had been no showing of inevitable disclosure, despite access employee had to customer lists and general business information). The bottom line is that there is nothing in the record demonstrating that Pennell has made use of any Safety-Kleen confidential or trade secret information, and his request for summary judgment should therefore be granted.

## **CONCLUSION**

Pennell respectfully requests that the Court grant him summary judgment on all counts of Safety-Kleen's complaint.

Dated: March 17, 2003                    Respectfully submitted,

_____
Sherry A. Swirsky (PA I.D. No. 27814)
SCHNADER HARRISON SEGAL & LEWIS LLP
1600 Market Street, Suite 3600
Philadelphia, Pennsylvania 19103-7286
Telephone:    (215) 751-2182
Facsimile:    (215) 972-7475

Timothy A. Duffy
KIRKLAND & ELLIS
200 East Randolph Drive
Chicago, Illinois 60601
Telephone:    (312) 861-2445
Facsimile:    (312) 861-2200

ATTORNEYS FOR DEFENDANT
DON R. PENNELL

## CERTIFICATE OF SERVICE

I, Sherry A. Swirsky, hereby certify that true and correct copies of the foregoing Defendant's Reply in Support of His Motion for Summary Judgment was served by hand delivery (Philadelphia) and facsimile and overnight delivery (South Carolina) upon plaintiff's counsel as follows:

Jason K. Cohen, Esquire
Stradley, Ronon, Stevens & Young, LLP
2600 One Commerce Square
Philadelphia, PA 19103-7098

Jeffrey S. Patterson, Esquire
Nelson Mullins Riley & Scarborough, L.L.P.
Keenan Building, Third Floor
1330 Lady Street
Columbia, South Carolina 29201-3332

Matthew D. Patterson, Esquire
Nelson Mullins Riley & Scarborough, L.L.P.
Liberty Building, Suite 600
151 Meeting Street
Charleston, South Carolina 29401

this 17th day of March, 2003.

_____
Sherry A. Swirsky (PA I.D. No. 27814)
SCHNADER HARRISON SEGAL & LEWIS LLP
1600 Market Street, Suite 3600
Philadelphia, Pennsylvania 19103-7286
Telephone:   (215) 751-2182
Facsimile:   (215) 972-7475

*Attorney for Defendant*